1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   LUIS GABRIEL RIO SOSA,                    No.  2:14-cv-0727 DB P

12                 Plaintiff,

13          v.                                 ORDER

14   FRED FOULK, et al,

15                 Defendants.

16

17          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil

18   rights action seeking relief under 42 U.S.C. § 1983.  The matter was referred to this court

19   pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

20          Before the court is plaintiff's fourth amended complaint.  (ECF No. 32).  For the reasons

21   stated below, the court will direct defendants identified in the Conclusion section of this order to

22   file a response to the cognizable claims lodged against them.

23   I.     SCREENING REQUIREMENT

24          The court is required to screen complaints brought by prisoners seeking relief against a

25   governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

26   court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

27   "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

28   monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)-(2).

                                              1

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

A complaint, or portion thereof, should only be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

## II.    PLEADING STANDARD

### A.    Generally

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cty., 811 F.2d 1243, 1245 (9th Cir. 1987).

////

2

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

**B.    Linkage Requirement**

Under Section 1983, a plaintiff bringing an individual capacity claim must demonstrate that each defendant personally participated in the deprivation of his rights. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). There must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Ortez v. Washington County, State of Oregon, 88 F.3d 804, 809 (9th Cir. 1996); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 556 U.S. at 676 (stating vicarious liability is inapplicable in Section 1983 suits). Since a government official cannot be held liable under a theory of vicarious liability in Section 1983 actions, plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights. Id. at 676.

Liability may be imposed on supervisory defendants under Section 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. Taylor, 880 F.2d at 1045. A sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation permits supervisorial liability. Hansen v. Black, 885 F.2d 642, 646 (9th

////

3

Cir. 1989) (citing Thompkins v. Bell, 828 F.2d 298, 303-304 (5th Cir. 1987)).  Defendants cannot be held liable for being generally deficient in their supervisory duties.

### III.      PLAINTIFF'S COMPLAINT[1]

Plaintiff's fourth amended complaint ("FAC") consists of six[2] claims levied against sixty-two High Desert State Prison ("HDSP") defendants, twenty-six of which are John Does.[3]  (See ECF No. 32 at 1-4).  It also alleges different, unrelated violations of right that occurred at the prison between August 2012 and February 2014.  (See generally id. at 5-18).

On the face of the FAC, the violations of right plaintiff alleges have occurred during this period are the following:  (1) Eighth Amendment right to personal safety; (2) Eighth Amendment right to be free from excessive force and Fourteenth Amendment right to due process; (3) Eighth Amendment right to the "minimal civilized measures of life's necessities" and/or prohibition against cruel and unusual punishment; (4) Eighth Amendment right to appropriate medical care and state law violations; (5) Fourteenth Amendment right to be free from deprivation of legal materials and right to access to courts, and (6) First and Fourteenth Amendment right to be free from retaliation for filing grievances and right to due process during disciplinary hearing.  (See id. at 5-16).  The relief plaintiff seeks includes a declaratory judgment that defendants' actions have violated his constitutional rights, as well as general requests for compensatory and punitive damages, costs of suit, attorney's fees and other relief the court deems just and proper.  (See id. at 17).

////

////

---

[1]  Plaintiff's FAC names defendants that are not accounted for on the docket.  (See generally ECF No. 32 at 1-4).  The court will direct the Clerk of Court to add these individuals to the case caption of the docket.

[2]  Although the page headers in the FAC indicate that there are only six claims in this action, because plaintiff has alleged multiple violations of right within more than one of these titled "claims," in all actuality, there are more than six claims in this pleading.

[3]  There are a few individuals named as defendants in the FAC against whom plaintiff makes no allegations.  (Compare ECF No. 32 at 1-4, with ECF No. 32 at 5-17).  These individuals will eventually be dismissed as litigants in this action along with those against whom plaintiff has not stated cognizable claims.

# IV.    APPLICABLE LAW

## A.    Personal Safety

"The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates." Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015). The right to personal security is an "historic liberty interest" that is protected substantively by the Due Process Clause. Youngberg v. Romeo, 457 U.S. 307, 315 (1982). This right is not extinguished by lawful confinement, even for penal purposes. See generally Hutto v. Finney, 437 U.S. 678 (1978). Insufficient protection of a prisoner resulting in harm inflicted by other inmates may also violate a prisoner's due process rights. Hernandez v. Denton, 861 F.2d 1421, 1424 (9th Cir. 1988) (citing Youngberg, 457 U.S. at 315-16).

A prisoner may state a Section 1983 claim under the Eighth Amendment against prison officials where the officials acted with deliberate indifference to the threat of serious harm or injury to him. Labatad v. Corrections Corp. of America, 714 F.3d 1155, 1160 (9th Cir. 2013); see Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (stating same with respect to harm inflicted by another inmate). "Deliberate indifference" has both subjective and objective components. Labatad, 714 F.3d at 1160. First, a prison official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists. Then, the official must also draw the inference. See id. at 1160 (citing to Farmer v. Brennan, 511 U.S. 825, 837 (1994) (internal quotations omitted)). Liability may follow only if a prison official knows that inmates face a substantial risk of serious harm and the official disregards that risk by failing to take reasonable measures to abate it. Labatad, 714 F.3d at 1160.

## B.    Deliberate Indifference to Serious Medical Need

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). Second, the prison

official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). This second prong . . . "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

### C.    Cruel and Unusual Punishment

"The Eighth Amendment proscribes the infliction of cruel and unusual punishment on prisoners. Whether a particular event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the evolving standards of decency that mark the progress of a maturing society.' " Schwenk v. Hartford, 204 F.3d 1187, 1196 (9th Cir. 2000) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (alteration in original) (internal quotation marks omitted) (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977)).

"It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Id. Accordingly, "courts considering a prisoner's claim must ask: 1) if the officials acted with a sufficiently culpable state of mind; and 2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Somers v. Thurman, 109 F.3d 614, 622 (9th Cir. 1997) (citing Hudson, 503 U.S. at 8).

////

////

### D. Excessive Force

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not . . . use excessive physical force against prisoners." Farmer, 511 U.S. at 832 (citing Hudson). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6-7 (brackets added) (referencing Whitley).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Hudson, 503 U.S. at 7 (internal quotation marks omitted) (citing Whitley 475 U.S. at 321. "When determining whether the use of force was wanton and unnecessary, evaluating the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response may also be proper to evaluate. See Hudson, 503 U.S. at 7 (citation omitted). The absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but it does not end it. Hudson, 503 U.S. at 7.

### E. Access to Courts

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). However, the right is limited to direct criminal appeals, habeas petitions, and civil rights actions. Id. at 354. Further, in order to state a claim for the denial of court access, a prisoner must establish that he suffered an actual injury. Id. at 349. "[A]ctual injury [is] actual prejudice with respect to contemplated or existing litigation, such as the ability to meet a filing deadline or to present a claim." Id. at 348. The prisoner "must identify a 'nonfrivolous,' 'arguable' underlying claim" and the specific remedy he lost, in order to give the defendant fair notice of his allegations. Christopher v. Harbury, 536 U.S. 403, 415 (2002) (quoting Lewis, 518 U.S. at 353 & n.3).

////

////

## F.    Retaliation

To state a viable First Amendment retaliation claim, a prisoner must allege five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); Jones, 791 F.3d at 1035 (citing Rhodes). A plaintiff who intends to assert a retaliation claim must show that the defendant was aware of plaintiff's prior protected conduct and that the protected conduct was "the 'substantial' or 'motivating' factor" behind the defendant's alleged misconduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009).

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 419 U.S. 274, 287 (1977)). "A successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (quoting Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)). Mere allegations of retaliatory motive or conduct will not suffice.

## G.    Administrative Segregation

The Due Process Clause does not create a liberty interest in remaining in the general population or being free from administrative segregation. Hewitt v. Helms, 459 U.S. 460, 466-67 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1091 (9th Cir. 1985), abrogated in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). The Ninth Circuit has concluded that prisoners have no liberty interest in remaining free from administrative segregation or solitary confinement. See May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997). Administrative

////

segregation is the type of confinement that should be reasonably anticipated by inmates at some point in their incarceration. <u>Toussaint</u>, 801 F.2d at 1091 (quoting <u>Hewitt</u>, 459 U.S. at 468).

States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (citations omitted). These interests are generally limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. <u>Sandin</u>, 515 U.S. at 484. However, courts of appeal have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison. <u>See</u> <u>Wilkinson v. Austin</u>, 545 U.S. 209, 223 (2005); Brown v. Oregon Dep't of Corr., 751 F.3d 983, 988 (9th Cir. 2014) (citing <u>Wilkinson</u>).

## V. DISCUSSION

### A. Claim One: Deliberate Indifference to Personal Safety and/or Serious Medical Needs

Plaintiff contends that his right to personal safety was violated when in August 2012, after plaintiff was told that "glass was waiting for him on the yard," defendant Barnes – the warden of HDSP[4] – failed to take appropriate action to protect him from danger. He also contends that between August 2012 and January 2013, K. Lavallver (CCI);[5] Correctional Officer Esquivel; Correctional Sergeant Graddock; Correctional Lieutenant M. Williams;[6] R. Kirch (F-C); Warden (A) S. Peery; T. Robertson (CCII); D. Fleetwood (C&PR); Captain C. Lewis; committee members John Does 1 through 5; Correctional Sergeant W.G. Hanks; A. Anderson, Jr. (BPT); Correctional Lieutenant J. Ramsey; S. Nicholas (CCII); Correctional Officer Nason; Correctional

---

[4] There is more than one defendant with the surname Barnes in this action. One is the warden of HDSP. The other is a correctional officer at HDSP. (<u>See</u> ECF No. 32 at 2.) If at any time these defendants are mistaken for one another in this order, plaintiff must inform the court immediately.

[5] Defendant K. Lavallver's name is spelled differently throughout plaintiff's FAC. (<u>See, e.g.</u>, ECF No. 32 at 2, 4, 5, 10). As a result, for purposes of consistency, throughout this order, the court will use the initial spelling, "Lavallver" when referring to this defendant.

[6] There is more than one defendant with the surname Williams in this action. One is a lieutenant at HDSP. The other is identified as "R. Williams, CCII." If at any time these defendants are mistaken for one another in this order, plaintiff must inform the court immediately.

Officer Cohn, and D. Perez (CSR) – all named defendants – were made aware of the threats to his safety but were deliberately indifferent to them.  (See ECF No. 32 at 5-7).  As a result, in January 2013 plaintiff was violently attacked by his cellmate.  (See id. at 5, 7).  Plaintiff contends that the attack left him permanently disfigured and required him to be cared for in a treatment facility for more than thirty days.  (See id. at 5, 7).

### 1.  Defendants Barnes, Lavaller, Graddock, Etc.

#### a.  Relevant Facts

Plaintiff asserts that in early August 2012, HDSP was on lockdown because glass of some sort was missing.  (See ECF No. 32 at 5).  During that time, plaintiff received an anonymous threat telling him that "glass was waiting for him on the yard."  (See id. at 5).  In response, plaintiff contends that in mid-to-late August 2012, his appellate attorney contacted the warden – defendant Barnes – via fax and e-mail and told him of the threat of violence that had been made against plaintiff, but defendant Barnes was deliberately indifferent to plaintiff's personal safety.  (See id. at 5).  Plaintiff further asserts that his sister-in-law contacted defendant Lavallver and told her about the threat and danger to plaintiff, but defendant Lavallver was also deliberately indifferent to plaintiff's personal safety.  (See id. at 5).

In addition, plaintiff states that on September 11, 2012, he also told defendant Graddock of the threat of violence that had been made against him, but that he, too, was deliberately indifferent to plaintiff's plight and placed plaintiff "back in [the] threat of imminent danger."  (See ECF No. 32 at 6) (brackets added).  On September 19, 2012, plaintiff was placed in administrative segregation.  (See id. at 6).

Finally, plaintiff contends that between September 21, 2012 and October 18, 2012, plaintiff also told the following defendants that he feared for his safety, yet they did nothing to protect him:  M. Williams, R. Kirch, S. Peery, T. Robinson, D. Fleetwood, C. Lewis and John Does 1 through 5, and A. Anderson, Jr.  (See ECF No. 32 at 6).

#### b.  Analysis

This claim alleging that the above-named defendants demonstrated deliberate indifference to plaintiff's personal safety between August 2012 and October 2012 is not cognizable.  Here,

1  given these facts, it is unclear precisely what additional measures defendants Barnes and
2  Lavallver could have taken to protect plaintiff during the period in question.  The same can be
3  said for the other named defendants in this claim.

4      Plaintiff has stated that the threat made against him in August 2012 was anonymous.  (See
5  ECF No. 32 at 5).  Thus, at that time, defendants had no ability to identify the individual who had
6  threatened plaintiff and place distance between the two.  In addition, within five weeks of plaintiff
7  informing defendant Barnes and defendant Lavallver of the threats to his safety, plaintiff was
8  placed in administrative segregation (see id. at 5-6), which presumably, did separate him from the
9  larger prison population and made it less likely that he would be harmed.

10      Plaintiff suggests no other way he believes these defendants could have protected him.
11  Moreover, plaintiff does not claim that the was harmed between August 2012 and mid-September
12  2012, prior to being placed in administrative segregation.  (See generally ECF No. 32 at 5-6).
13  Finally, in prison, the potential for violent confrontation is ever-present.  See generally Jones v.
14  North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 132 (1977) (stating same).
15  Consequently, taking significant measures to protect an inmate each time his safety is threatened
16  is not practical, and arguably, is likely not doable when the threat has come from an anonymous
17  source.

18      For these reasons, this particular deliberate indifference claim against the above-named
19  defendants is not cognizable, and they will not be required to respond to it.

20          **2.  Defendants Williams, Ramsey and Nicholas**

21              **a.  Relevant Facts**

22      Plaintiff contends that after being placed in administrative segregation in mid-September
23  2012, shortly thereafter on September 21, 2012, he gave defendant M. Williams a corroborated,
24  written, and detailed statement of the names, known aliases and cell numbers of the inmates who
25  were continually threatening him.  (See ECF No. 32 at 6).  Despite this, plaintiff asserts that on
26  October 30, 2012, he was intentionally housed with Hewitt Mitchell, who was a named enemy on
27  the list plaintiff had given to defendant Williams.  (See id. at 6).
28  ////

11

Plaintiff also claims that on November 2, 2012, he told defendants Ramsey and Nicholas that he was concerned for his safety and that he had been intentionally housed with inmate Mitchell. (See ECF No. 32 at 6). He argues that they, too, were deliberately indifferent to his safety concerns and failed to take appropriate action to prevent him from being harmed. (See id. at 5). As a result, plaintiff asserts, weeks later, in January 2013, he was attacked by inmate Mitchell and was seriously injured. (See id. at 5, 7).

**b. Analysis**

Plaintiff has stated a cognizable Eighth Amendment deliberate indifference to personal safety claim against defendants Williams, Ramsey and Nicholas. In mid-September 2012, plaintiff was placed in administrative segregation, which isolated him from the larger population and likely kept him safer. (See ECF No. 32 at 6). Thereafter, over a period of a little over a month, plaintiff told each of these defendants that he still feared for his safety and/or that there was a substantial risk of harm to him.

Despite these facts, plaintiff was housed with one of the people who he had specifically told defendants was a threat to him. None of the defendants intervened to remedy this problem. This ultimately led to the January 2013 assault by that individual.

For these reasons, defendants Williams, Ramsey and Nicholas will be directed to respond to this claim.

**3. Defendants Nason and Cohn**

**a. Relevant Facts**

According to plaintiff, after his mid-September 2012 placement into administrative segregation, between November 2012 and January 2013, the prison was on lockdown. (See ECF No. 32 at 7). Inmate Mitchell was his cellmate at that time. (See id. at 6). Plaintiff asserts that in late January 2013, inmate Mitchell began threatening plaintiff. (See id. at 7). Plaintiff states that at that point, he pleaded with defendants Nason and Cohn to take appropriate action to keep him from being harmed. (See id. at 7). However, plaintiff contends, they were deliberately indifferent to his personal safety concerns, and they failed to take appropriate action to protect him. (See id. at 7).

Plaintiff states that on January 28, 2013, the facility lockdown was lifted.  (See ECF No. 32 at 7).  Thereafter, plaintiff claims that on January 31, 2013, inmate Mitchell violently attacked him.[7]  (See id. at 7).  Plaintiff states that as a result of the attack, he was left bleeding profusely, and a large chunk of his nose was missing.  (See id. at 7).

### b.  Analysis

These facts as alleged support plaintiff's deliberate indifference to personal safety claims against defendants Nason and Cohn.  Inmate Mitchell, plaintiff's cellmate who was on the list of enemies plaintiff had provided to the prison, had begun threatening plaintiff, which prompted plaintiff to report the threats to defendants Nason and Cohn.  (See ECF No. 32 at 6-7).  Despite their knowledge of inmate Mitchell's threats, according to plaintiff, nothing was done to protect him, which in turn, provided inmate Mitchell an opportunity to follow through on his threats and do plaintiff harm.

For these reasons, defendants Nason and Cohn will be ordered to respond to this claim.

### 4.  Defendants Byers and Equivel

### a.  Relevant Facts

Plaintiff states that after the January 2013 attack, he was told to report to medical.  (See ECF No. 32 at 7).  He claims that defendants Byers and Esquivel were deliberately indifferent to plaintiff's assault.  Further plaintiff alleges they were deliberately indifferent to his serious medical needs when they neither called a "medical emergency code one" alarm nor a "code one" alarm and instead forced plaintiff to walk to medical unescorted on the same yard where he had received constant physical threats.  (See id. at 7).

Plaintiff states that the attack by inmate Mitchell left him permanently disfigured.  (See ECF No. 32 at 7).  He also alleges that the attack left him with substantial injuries to his head, face, neck and shoulders.  (See id. at 7).  In addition, plaintiff states that because of the attack, he also had to have surgery, he was hospitalized for two days, and he had to stay at the Correctional

_____

[7]  Plaintiff does not indicate that he was housed on B-Yard when the attack by his cellmate occurred.  (See generally ECF No. 32).  However, based on plaintiff's statements, the court presumes that this was the case.  If this presumption is incorrect, the parties must state as much in their subsequent filings.

Treatment Center for more than thirty days.  (See id. at 7).  Plaintiff also asserts that blurred

vision, intense pain to his head and neck, lack of sleep, nightmares, anxiety and major depression

for months after the attack were also part of his injuries.  (See id. at 7).

### b.  Analysis

The deliberate indifference to personal safety and to serious medical needs claims against

defendants Byers and Esquivel are also cognizable.  Assuming plaintiff's injuries from the attack

by inmate Mitchell were as serious as plaintiff states – i.e., leaving plaintiff bleeding profusely

with a piece of his nose missing – on its face, defendant Byers' and defendant Esquivel's failure

to signal the occurrence of an emergent event itself, not to mention them requiring plaintiff to

walk to medical in his vulnerable state through a yard of possible enemies without an escort,

crosses the threshold of cognizable with respect to plaintiff's deliberate indifference to serious

medical needs and personal safety claims.  Arguably, earlier action and an escort for plaintiff may

have reduced the emotional trauma plaintiff states he experienced and possibly even the severity

of any long-term physical damage to plaintiff.

Consequently, defendants Byers and Esquivel will be required to respond to these two

claims.

### 5.  Defendant Cornelison

#### a.  Relevant Facts

On March 18, 2013 and on April 3, 2013, plaintiff states that he filed inmate appeals that

expressed his ongoing safety concerns, and he identified his enemy who was housed on B-Yard[8]

to prison officials.  (See ECF No. 32 at 7).  However, plaintiff states, defendant B. Cornelison

(CCII) failed to take appropriate action to prevent additional violence towards plaintiff when he

rejected plaintiff's appeal.

#### b.  Analysis

Plaintiff has made a cognizable deliberate indifference to personal safety claim against

defendant Cornelison.  The rejection of an inmate's appeal on its face is not actionable.  However,

---

[8]  It is unclear whether this enemy was inmate Mitchell or another inmate.  (See ECF No. 32 at 7).

it is unclear from the FAC whether defendant Cornelison's rejection of the appeal was procedural or substantive in nature. Construing the complaint in a light most favorable to plaintiff (see Jenkins, 395 U.S. at 421), the court presumes that defendant Cornelison's rejection of plaintiff's appeal was substantive in nature and that at minimum, review of the appeal put him on notice with respect to plaintiff's assertions that his personal safety was at risk. These facts would make this claim against defendant Cornelison cognizable at this stage in the proceedings. See, e.g., Coleman v. Adams, No. 1:06-cv-00836-AWI-SKO PC, 2010 WL 2572534, at *6-7 (E.D. Cal. June 22, 2010) (finding defendants' actions in reviewing administrative appeal state cognizable claim for violations of right under the Eighth Amendment).

Accordingly, defendant Cornelison will be directed to respond to this claim.

### 6. Defendants Fleetwood, Pronecord, Lewis, Spalding and Perez

#### a. Relevant Facts

Plaintiff claims that on April 2, 2013, he went before the Institutional Classification Committee ("ICC") again. (See ECF No. 32 at 7). He states that during the review, he pleaded to members of the committee, defendants Fleetwood, Pronecord, Lewis and Spalding not to return him to B-Yard because he was concerned for his safety, and he had enemies who were waiting for him to be returned there. (See id. at 7). He claims that in response, defendant Fleetwood insisted that plaintiff go back to B-Yard. (See id. at 7). Plaintiff also claims that defendant Spalding stated that plaintiff had no enemies on the yard and that because plaintiff's rules violation report had been reduced to a mutual combat allegation, his return to B-Yard was warranted. (See id. at 7). For these reasons, plaintiff argues that these defendants were deliberately indifferent to his personal safety needs because they failed to take the appropriate action to protect him from danger. (See id. at 7).

Plaintiff claims that the April 2013 determination by the ICC caused him severe emotional trauma because it placed him right back in the hands of his enemies who had violently attached him months before. (See ECF No. 32 at 8). He claims that the placement constituted deliberate indifference on the part of defendants Fleetwood, Lewis, Pronecord and Spalding because they failed to take appropriate action to prevent further danger. (See id. at 8).

15

With respect to defendant Perez, plaintiff contends that after each ICC hearing, defendant Perez was notified about plaintiff's safety concerns. (See ECF No. 32 at 8). However, according to plaintiff, defendant Perez failed to take appropriate action to prevent harm coming to him, despite the fact that he "had ultimate authority and opportunity to do so." (See id. at 8). For these reasons, plaintiff contends, defendant Perez is also liable. (See id. at 8).

### b. Analysis

This claim is cognizable as well. Plaintiff had just been attacked at the end of January 2013 by his cellmate. (See ECF No. 32 at 7). Thereafter, he spent more than a month in treatment at the Correctional Treatment Center. (See id. at 7). Approximately two weeks after his return to HDSP, in mid-March and again in early April, plaintiff continued to express his concerns and fears to defendants of continuing to be housed on B-Yard, to no avail. (See id. at 7). An inmate need not wait until he is assaulted to obtain relief. See Woodhous v. Virginia, 487 F.2d 889 (4th Cir. 1973); Holt v. Sarver, 442 F.2d 304, 308 (8th Cir. 1971), but cf. Mt. Healthy City School Dist. Bd. of Educ., 429 U.S. at 285-87 (stating plaintiff must allege injury to establish prima facie case).

Thus, it would follow that if an inmate like plaintiff has been assaulted, yet shortly thereafter, defendant prison officials still decline to intervene by placing the plaintiff in a safer environment, then relief might also be warranted. This is, in part, because plaintiff alleged harm – specifically, severe emotional trauma – has come to him as a result of defendants' inaction. (See ECF No. 32 at 8). Consequently, defendants Cornelison, Fleetwood, Pronecord, Lewis, Spalding and Perez will be directed to respond to this claim.

### 7. Defendants Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin

#### a. Relevant Facts

Finally, plaintiff contends that on January 30, 2014, defendants Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin were deliberately indifferent to his safety concerns when, aware of

////

////

////

16

the danger to him on B-Yard, they "chose to put him again [sic] in threat of imminent danger."[9] (See ECF No. 32 at 7) (brackets added).

### b. Analysis

This claim, without more, is not cognizable. First, plaintiff fails to state why, in January 2014, he was "in threat of imminent danger" and/or at the hands of whom. (See ECF No. 32 at 7). The court cannot presume that the threat was based upon plaintiff's January 2013 attack that had taken place a year earlier. See generally McKinney v. DeBord, 507 F.2d 501, 504 (9th Cir. 1974) (stating when construing complaint, court not required to give plaintiff benefit of every conceivable doubt). In addition, plaintiff fails to link specific actions or inaction of each of these named defendants to a specific incident that would support this deliberate indifference claim.

Accordingly, defendants Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin will not be required to address this claim in defendants' response to plaintiff's FAC.

### B. Claim Two: Excessive Force

#### 1. Relevant Facts

Plaintiff asserts that his Eighth Amendment right to be free from excessive force was violated when, on October 18, 2012, after an ICC meeting at which plaintiff had conveyed his fear of imminent danger to defendant Barnes, defendant Hanks shoved him, and defendant Lewis yanked up his handcuffs, violently snapping his neck forward. (See ECF No. 32 at 9). Thereafter, defendants Hanks and Lewis "yanked [him] . . . around . . . and . . . forced [him] to run, leaning forward through the [B]uilding 7 rotunda to a holding cage near 'A' section." (See id. at 9) (brackets added). Plaintiff contends that defendants Hanks and Lewis then "maliciously and sadistically slammed [him] headfirst into a 3'x 3' holding cage, inflicting sever[e] pain to [him while he was] still handcuffed behind his back." (Id. at 9) (brackets added).

////

////

---

[9] In Claim Six, plaintiff also argues that prior to these defendants releasing him onto B-Yard, they violated his First Amendment rights when they retaliated against him for having filed grievances by placing him in administrative segregation. (See ECF No. 32 at 15-16). The court will discuss this argument in the section for Claim Six.

Additionally, plaintiff states that as a result, he suffered "a swollen forehead with a large bump at the center."[10] (Id. at 9).

### 2. Analysis

Plaintiff has stated cognizable claims of excessive force against defendants Hanks and Lewis during their escort of plaintiff in October 2013. This is because their alleged yanking and shoving of plaintiff – who was handcuffed – and the shoving of plaintiff head-first into a holding cage which left him with a bump on his forehead, on its face, does not appear to constitute force that was applied in a good-faith effort to maintain or restore discipline. See generally Hudson, 503 U.S. at 6-7. On the contrary, without more information, it appears to have been done maliciously and sadistically to cause harm. See generally Hudson, 503 U.S. at 6-7.

Consequently, defendants Hanks and Lewis shall be ordered to respond to this claim.

### C. Claim Three: Cruel and Unusual Punishment and/or Deliberate Indifference

### 1. Relevant Facts

Plaintiff argues that his Eighth Amendment right to the "minimal civilized measures of life's necessities" was violated when, after he told defendants Barnes (warden), Lavallver, Barnes (correctional officer), Esquivel, M. Williams, Kirch, Peery, Robertson, Fleetwood, Lewis, Nason, Hanks, and John Does 1 through 5 in August 2012 that he feared for his safety and they failed to act to protect him, he was forced to stop all his program activities, to stop going to chow call and to stop using the telephone. (See ECF No. 32 at 10). He contends that these defendants' failure to protect him effectively prevented him from receiving daily meals, showers, dayroom programs and the like. (See id. at 10). As a result, plaintiff argues, he was "relegate[ed] . . . to evenings of hunger, solitude, and emotional distress." (Id. at 10).

////

////

---

[10] In what appears to be a continuation of events stemming from the initial alleged excessive force incident in Claim Two, in Claim Four, plaintiff also alleges defendants Hanks and Lewis were deliberately indifferent to his serious medical needs, when, after their use of excessive force, they failed to seek medical treatment for him. (See ECF No. 32 at 11-12). The court will discuss this charge against defendants Hanks and Lewis when it reviews Claim Four.

### 2. Analysis

This claim is without merit. Plaintiff does have a right to the "minimal civilized measures of life's necessities." <u>Farmer</u>, 511 U.S. at 834; <u>see</u> generally <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981). However, Section 1983 requires that a link exist between plaintiff's failure to receive necessities such as meals and showers and the actions of each of the defendants. <u>See</u> <u>Ortez</u>, 88 F.3d at 809; <u>Taylor</u>, 880 F.2d 1045.

Plaintiff is alleging that seventeen defendants, some of whom have yet to be identified, chose not to protect him and that the inaction of each of them ultimately forced him to self-isolate, which in turn, deprived him of basic constitutional rights. This claim fails to link specific actions or inaction directly to specific defendants, and it speaks in generalities. As such, it is overly broad. Furthermore, even if plaintiff had linked each defendant with specific inaction, viable claims of cruel and unusual punishment must involve more than an ordinary lack of due care for a prisoner's interests. <u>See</u> <u>Whitley</u>, 475 U.S. at 319. Finally, plaintiff's failure to receive meals and showers was, by his own admission, self-imposed. There is no indication that he was threatened or forced by any of the aforementioned defendants to decline any of those necessities. Plaintiff chose not to receive them. Thus, any resulting harm he experienced because of his personal choices cannot be imputed to these defendants.

As a result, these seventeen defendants will not be required to address this claim.

### D. Claim Four: Deliberate Indifference to Serious Medical Needs[11]

#### 1. Defendants Hanks and Lewis

##### a. Relevant Facts

In Claim Four, plaintiff claims defendants Hanks and Lewis demonstrated deliberate indifference to his serious medical needs when, on October 18, 2012, after using excessive force against him, defendants Hanks and Lewis intentionally denied him medical care. (<u>See</u> ECF No. 32 at 11). Specifically, immediately after the incident, they did not call for medical care for

---

[11] Because the deliberate indifference allegations made against defendants Byers and Esquivel that relate to the January 31, 2013, attack on plaintiff in Claim Four repeat allegations that have been made in Claim I (<u>compare</u> ECF No. 32 at 7, <u>with</u> ECF No. 32 at 11), the court does not address this part of Claim Four.

plaintiff.  (See id. at 12).  As a result, plaintiff asserts, in addition to his visibly swollen forehead, he suffered intense pain and dizziness, and he could not collect his thoughts for a few days.[12] (See id. at 11).

### b.  Analysis

This deliberate indifference claim lodged against defendants Hanks and Lewis is cognizable.  The failure to provide a prisoner with a head injury timely medical attention constitutes a denial of the "minimal civilized measure of life's necessities."  See generally Farmer, 511 U.S. at 834.  Moreover, if defendant Hanks' and defendant Lewis' alleged mishandling of plaintiff did in fact lead to his head injury, their subsequent failure to see that plaintiff received timely treatment for it could establish a culpable state of mind sufficient to pass screening review.  Id. at 834.

Accordingly, defendants Hanks and Lewis will be ordered to respond to this deliberate indifference claim.

### 2.  Defendant Rohlfing

#### a.  Relevant Facts

With respect to defendant Rohlfing, a medical doctor, plaintiff contends that on April 23, 2013, he complained to him about suffering from severe pain in his neck and dizzy spells.  (See ECF No. 32 at 12).  However, according to plaintiff, defendant Rohlfing neither addressed his issues nor wrote them down; he only "not[ed] plaintiff's dizziness."  (See id. at 12) (brackets added).

Months later, in September 2013, when plaintiff complained to defendant Rohlfing about severe back pain and numbness in his legs, plaintiff states that defendant Rohlfing prescribed plaintiff Tylenol, despite the fact that plaintiff's liver condition precludes him from using Tylenol.

---

[12]  In this claim, plaintiff also alleges violations of "state medical care tort" and "state medical malpractice."  (See ECF No. 32 at 11).  A state's violation of its own laws does not create a cognizable constitutional claim.  See generally 42 U.S.C. § 1983; see also Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (citation omitted).  Moreover, one may not transform state law issues into federal ones by simply asserting federal constitutional claims.  See Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).  For these reasons, these claims are not cognizable on federal review and will not be considered in the court's analysis of Claim Four.

(See ECF No. 32 at 12). This, plaintiff argues, was negligence on defendant Rohlfing's part. (See id. at 12).

### b. Analysis

Plaintiff's claims against defendant Rohlfing that he: (1) did nothing to treat plaintiff's severe neck pain and dizzy spells in April 2013, and (2) prescribed him the contraindicated drug Tylenol for him in September 2013 when treating plaintiff's severe back pain and leg numbness state cognizable claims. This is because both incidents presumably left plaintiff in pain. Deliberate indifference to the unnecessary and wanton infliction of pain is proscribed by the Eighth Amendment and can manifest in prison doctors' responses to prisoners' needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).

Therefore, defendant Rohfling will be ordered to respond to these two claims.

### 3. Defendant Pomazal

#### a. Relevant Facts

With respect to defendant Pomazal, another medical doctor, plaintiff alleges that on October 28, 2013, "under an assessment of 'cervical strain'," defendant Pomazal cracked his neck "without an X-Ray [sic] or MRI" and did so without his permission. (See ECF No. 32 at 12) (brackets added). Plaintiff asserts that defendant Pomazal is neither a chiropractor nor an orthopedic or spine specialist and that his negligent treatment of him increased his pain. (See id. at 12). Results of a subsequent x-ray in November 2013 showed damage to plaintiff's spine, and the results of an MRI in January 2014 revealed damage as well. (See id. at 12). Despite these facts, plaintiff contends that he was given "nothing but pain pills" as treatment. (See id. at 12).

#### b. Analysis

Plaintiff's assertion that defendant Pomazal "cracked" his neck without having x-ray or MRI information about plaintiff's pain and without chiropractic or orthopedic specialization also raises a cognizable deliberate indifference claim. Prior to defendant Pomazal treating plaintiff, plaintiff had complained of neck pain. The cracking of plaintiff's neck – a delicate area of the body – without first reviewing an x-ray and/or MRI, could obviously lead to increased damage to

////

the area and pain, irrespective of whether defendant Pomazal had orthopedic or chiropractic training.

In addition, plaintiff has raised a cognizable deliberate indifference claim against defendant Pomazal with respect to the subsequent treatment of plaintiff. A treating physician has broad authority in his or her treatment of a patient. See generally Smith v. Schneckloth, 414 F.2d 680, 681 (9th Cir. 1969) (stating correctional authorities have wide discretion in matters of internal prison administration). At the same time, prisoners are entitled to receive at the very least, adequate medical care. See generally Farmer, 511 U.S. at 832-33. Indeed, there are situations where the medical treatment received by a prisoner is so bad that the treatment itself manifests a deliberate indifference. See Estelle v. Gamble, 429 U.S. 97, 104-105, n.10 (1976) (listing examples of same); see also Dull v. Ylst, No. 93-16441, 1994 WL 140641, at *2 (9th Cir. Apr. 14, 1994) (citing Estelle). However, given that plaintiff's x-ray and MRI revealed damage to plaintiff's spine, it would seem, arguably, that some sort of additional therapy, e.g., physical therapy, surgery, pain management instruction, would have been warranted.

For these reasons, plaintiff has raised a cognizable claim of deliberate indifference against defendant Pomazal with respect to: (1) the cracking of plaintiff's neck and (2) the treatment of plaintiff's damaged spine and related pain.

### 4. Defendants Gasior, Miranda and Schmidt

#### a. Relevant Facts

Finally, with respect to defendants Gasior, Miranda and Schmidt, plaintiff asserts that as a group they were "professionally negligent" when they did not try to cure him. They simply provided him with pain medication. (See ECF No. 32 at 12). He contends that this put him at risk for and actually caused further injury to his back and neck. (See id. at 12).

#### b. Analysis

This claim against these defendants is not cognizable. Once again, the claim fails to assign specific actions to a specific defendant. See Ortez, 88 F.3d at 809; see also Taylor, 880 F.2d at 1045. The claim also fails to state with specificity what plaintiff believes each defendant should have treated when they saw him and/or why the prescription of pain medication was

inadequate.  (See generally ECF No. 32 at 12).

For these reasons, this claim against defendants Gasior, Miranda and Schmidt is not cognizable, and they will not be required to respond.

### E.    Claim Five:  Access to Courts

#### 1.  Defendants Brown and Weeks

##### a.  Relevant Facts

In Claim Five, plaintiff asserts that in October 2013, defendants Brown and Weeks violated his right of access to the courts and to due process when they confiscated his legal materials, including his Section 1983 complaint.[13]  (See ECF No. 32 at 13).  As a result, plaintiff was unable to have his complaint heard by the court.  (See id. at 13).  Plaintiff claims that when he asked to have his legal materials returned to him, his request was denied.  (See id. at 13).  In December 2013, when plaintiff resubmitted his complaint against defendants Brown and Weeks for having confiscated his legal materials, the appeals office stated it had never received his appeals.  (See id. at 13).  This, plaintiff asserts, further denied him access to the courts.  (See id. at 13).

##### b.  Analysis

Plaintiff has stated a cognizable denial of access to courts claim against defendants Brown, Weeks and Lopez.[14]  He has alleged that because defendants took his legal materials from him that were related to a civil rights action, he was unable to file one.  (See ECF No. 32 at 13).  The inability to file the action constitutes sufficient harm.  See generally Lewis, 518 U.S. at 348-49, 35.

Thus, defendants Brown and Weeks will be directed to respond to this claim.

////

////

---

[13]  It appears that plaintiff may have been in administrative segregation at the time of the incident. (See ECF No. 32 at 13) (stating plaintiff was retained in ad-seg in October 2013).
[14]  Plaintiff has not listed defendant L. Lopez as a named defendant in this action.  (See ECF No. 32 at 1-4).  Therefore, the court will direct the Clerk of Court to add him as a defendant to the case caption of the docket along with others.

1    **2.    Defendant Lopez**

2        **a.    Relevant Facts**

3        Thereafter, plaintiff contends that on February 8, 2014, his missing property was returned

4    to him, minus his law books.  (See ECF No. 32 at 13).  Three days later, in a subsequent appeal,

5    plaintiff states he was told by defendant L. Lopez that his appeal issues would not be addressed

6    and that he should not file any additional appeals related to his "stolen confidential legal

7    materials."  (See id. at 14) (plaintiff's words).  Plaintiff contends that this was an attempt on

8    defendant Lopez's part to deny his right to appeal, which the Prison Litigation Reform Act

9    ("PLRA") permits.  (See id. at 14).  These facts, plaintiff argues, support his access to courts

10   claim against defendant Lopez.

11       **b.    Analysis**

12       Plaintiff's claim that defendant Lopez's handling of his administrative appeal denied him

13   access to the courts is also cognizable.  Plaintiff filed administrative appeals with the hope of

14   having his legal materials returned to him.  (See ECF No. 32 at 14).  Instead of reviewing

15   plaintiff's appeal, defendant Lopez allegedly not only refused to review plaintiff's appeal, he

16   actively discouraged him from filing additional ones.  Plaintiff's inability to have his legal

17   materials located and returned to him via the administrative appeals process could reasonably, in

18   turn, affected his ability to file claims in this court.

19        For these reasons, defendant Lopez will also be directed to respond to this denial of

20   access to courts claim.

21   **F.    Claim Six:  Retaliation and Due Process**

22       **1.  Defendants Hanks and Williams**

23           **a.    Relevant Facts**

24       In Claim Six, plaintiff contends that defendants Hanks and M. Williams violated his First

25   Amendment right to be free from retaliation as well as his Fourteenth Amendment rights when,

26   sometime after the attack on plaintiff that occurred on January 31, 2013, they wrote up false

27   incident reports on him after he had reported the attack.  (See ECF No. 32 at 15).

28   ////

1  Plaintiff contends that defendants did this in order to cover up their own liability for failing to

2  take appropriate action to prevent the attack.  (See id. at 15).

3  **b.  Analysis**

4  Plaintiff has stated a cognizable retaliation claim against defendants Hanks and Williams.

5  Prisoners have a First Amendment right to file grievances against prison officials and to be free

6  from retaliation when doing so.  See Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012);

7  Brodheim, 584 F.3d at 1271 n.4 (stating conduct protected by First Amendment includes

8  communications that are part of grievance process).  Interference with that right in the form of

9  filing false rules violation reports in retaliation – as plaintiff alleges defendants Hanks and

10  Williams did – interferes with that right.  Moreover, given the current facts, the filing of a rules

11  violation report on an inmate who claims he was attacked and characterizing the attacked

12  inmate's actions as "mutual combat" (see ECF No. 32 at 7) does not appear to advance any sort of

13  legitimate correctional goal, and it could have had a chilling effect on plaintiff.  See Rhodes, 408

14  F.3d at 567-68.

15  Accordingly, defendants Hanks and Williams will be directed to file a response to this

16  claim.

17  **2.  Defendants Williams and Spalding**

18  **a.  Relevant Facts**

19  In Claim Six, plaintiff further contends that in October 2013, defendants R. Williams and

20  Spalding violated his First Amendment rights when they threatened to retaliate against him if he

21  did not withdraw a complaint he filed against defendant Fleetwood.  (See ECF No. 32 at 15-16).

22  Plaintiff asserts that during that month, his cell was searched more than once and that during one

23  of the searches conducted by defendants Brown and Weeks, his legal documents and Section

24  1983 complaint were confiscated.[15]  This, plaintiff alleges, prevented him from "having his

25  claims heard by the judicial branch of government."  (See id. at 16).

26  ////

---

[15]  The court believes that the confiscation of legal documents claim against Brown and Weeks in this section is duplicative of the one in Section V.E.1.

**b. Analysis**

Construing this claim in a light that is most favorable to plaintiff (see Jenkins, 395 U.S. at 421), plaintiff has alleged cognizable claims of retaliation against defendants Williams and Spalding. Cell searches on their face serve a legitimate correctional goal. See Reed v. Tracy, No. 3:11-cv-00066 HDM-WGC, 2013 WL 6076460 at *4 (D. Nevada Nov. 18, 2013). However, doing so repeatedly after threats of retaliation have allegedly been made calls into question the validity of those searches. See generally Pratt, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.").

For these reasons, defendants Williams and Spalding will be ordered to respond this retaliation claim.

**3. Defendants Cornelison, Foulk, Fleetwood, Nicholas and Laguna-Griffin**

**a. Relevant Facts**

Finally, in Claim Six, plaintiff alleges that in October 2013, defendants Cornelison, Foulk, Fleetwood, Nicholas, and Laguna-Griffin violated his First Amendment rights when they retaliated against him by placing him in administrative segregation because he refused to withdraw his excessive force complaint against defendants Fleetwood and Hanks. (See ECF No. 32 at 16). He states that on October 24, 2013,[16] after his cell had been searched by defendants Brown and Weeks, defendant Cornelison interviewed him about the excessive force complaint he had filed against defendant Hanks. (See id. at 16). According to plaintiff, during the interview, defendant Cornelison attempted to try to convince plaintiff to drop the appeal. (See id. at 16). Plaintiff refused to do so. (See id. at 16). As a result, plaintiff contends, later that day, he was placed in administrative segregation for refusing to withdraw his complaints against defendants Fleetwood and Hanks.

One week later, on October 31, 2013, at a subsequent ICC review in front of committee members, Foulk, Fleetwood, Nicholas and Laguna-Griffin, plaintiff states he was further detained

---

[16] Plaintiff's FAC lists this date as "October 24, 2014." (See ECF No. 32 at 16). However, given the chronology of the events as stated therein, the court believes this is a typographical error and that the date should read "October 24, 2013." If this is incorrect, plaintiff must inform the court.

in administrative segregation. (See ECF No. 32 at 16). Thereafter, on January 9, 2014, plaintiff was again detained. On that date, however, plaintiff was not given a hearing prior to the extension of his stay there. (See id. at 16).

On January 30, 2014, ICC committee members Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin released plaintiff to B-Yard. (See ECF No. 32 at 16). Plaintiff contends that defendants released him to that yard in order to further retaliate against him because they knew of the danger to plaintiff there. (See id. at 16). Plaintiff contends that these actions of defendants caused him to suffer severe emotional distress. (See id. at 15-16).

### b. Analysis

#### i.) Retaliation

Plaintiff's retaliation claim against defendants Cornelison, Foulk, Fleetwood, Nicholas and Laguna-Griffin is cognizable. First, as stated earlier, plaintiff has a First Amendment right to file grievances. See Watison, 668 F.3d at 1114; Brodheim, 584 F.3d at 1271 n.4. Therefore, these defendants' placement of plaintiff in administrative segregation in purported retaliation against plaintiff for refusing to withdraw his grievances against defendants Fleetwood and Hanks creates a violation of right.

As a result, defendants Cornelison, Foulk, Fleetwood, Nicholas and Laguna-Griffin will be ordered to respond to this claim.

#### ii.) Due Process

Plaintiff's claim that ICC committee member defendants Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin violated his due process rights when, on January 9, 2014, they retained plaintiff in administrative segregation and did so without first conducting a disciplinary hearing (see ECF No. 32 at 16) is not cognizable. This is because placement in administrative segregation, in and of itself, does not implicate a protected liberty interest. See Sandin, 515 U.S. at 486. Furthermore, plaintiff has stated that within a week of being placed in administrative segregation, he received an ICC hearing in front of defendants. (See ECF No. 32 at 16).

Additionally, there is no indication that plaintiff had a state-created interest in multiple hearings prior to his term being extended. (See generally ECF No. 32 at 16). Moreover, plaintiff

has not alleged that his two-month stay in administrative segregation constituted an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Keenan v. Hall, 83 F.3d 1083, 1088 (9th Cir. 1996) (citing Sandin).

Finally, even if plaintiff could establish that he had a liberty interest in having a hearing each time prior to an extension of his administrative segregation period, defendants' failure to provide him with one does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Consequently, defendants Foulk, Fleetwood, Hanks, Nicholas and Laguna-Griffin have qualified immunity with respect to this claim. See Harlow, 457 U.S. at 818. For these reasons, this claim of violation of right under the Due Process Clause is not cognizable.

Therefore, these defendants will not be required to respond to it.

## VI. CONCLUSION

In conclusion, plaintiff has stated the following cognizable claims of violation of right against the following defendants:

**Claim One:  Deliberate Indifference to Personal Safety and/or Serious Medical Needs**
- Personal safety – Section V.A.2.:  Defendants Williams, Ramsey and Nicholas
- Personal safety – Section V.A.3.:  Defendants Nason and Cohn
- Personal safety and serious medical needs – Section V.A.4.:  Defendants Byers and Esquivel
- Personal safety – Section V.A.5.:  Defendant Cornelison
- Personal safety – Section V.A.6.:  Defendants Fleetwood, Pronecord, Lewis, Spalding and Perez

**Claim Two:  Excessive Force**
- Excessive force – Section V.B.:  Defendants Hanks and Lewis

**Claim Four:  Deliberate Indifference to Serious Medical Needs**
- Serious medical needs – Section V.D.1.:  Defendants Hanks and Lewis
- Serious medical needs (two claims) – Section V.D.2.:  Defendant Rohlfing
- Serious medical needs (two claims) – Section V.D.3.:  Defendant Pomazal

**Claim Five:  Access to Courts**
- Access to courts – Section V.E.1.:  Defendants Brown and Weeks
- Access to courts – Section V.E.2.:  Defendant Lopez

////

////

**Claim Six: Retaliation**
- Retaliation – Section V.F.1.: Defendants Hanks and M. Williams
- Retaliation – Section V.F.2.: Defendants R. Williams and Spalding
- Retaliation – Section V.F.3.b.i.): Defendants Cornelison, Foulk, Fleetwood, Nicholas and Laguna-Griffin

## VII.    NO LEAVE TO AMEND

A number of plaintiff's claims were deficient in content and could be amended to state cognizable claims.  For the following reasons, however, the court declines to extend this opportunity to plaintiff again.

This is plaintiff's fourth amended complaint.  (See ECF Nos. 12, 25, 29, 32).  Plaintiff's original complaint was 128 pages.  (See ECF No. 1).  His first amended complaint, which he filed without leave from the court to do so, was 199 pages, total, 40 pages of which was the complaint. (See ECF No. 12).  His second amended complaint was 44 handwritten pages.  (See ECF No. 25). His third amended complaint was 51 handwritten pages.  (See ECF No. 29).  The instant complaint, though only 18 pages, is typewritten, single-spaced and contains multiple causes of action about unrelated incidents against over sixty defendants.  (See generally ECF No. 32).

After a complaint has been amended once as a matter of course, a party may only amend it again if given leave by the court to do so.  See Fed. R. Civ. P. 15(a)(2).  Each time plaintiff has been given the opportunity to amend, he has been told that a properly filed amended complaint should be brief, and he has been told what a properly filed amended complaint should contain.[17]

_____

[17]  On more than one occasion, plaintiff has been told that the court is not inclined to consider a complaint in which it is unclear precisely which allegations support which claims.  (See generally ECF No. 16 at 3-4; ECF No. 28 at 2-3; ECF No. 31 at 3-4).  Prior to being granted the opportunity to file the instant amended complaint, in its review of plaintiff's third amended complaint, the court warned plaintiff as follows:

> A long, rambling pleading including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury, or joining a series of unrelated claims against many defendants . . . .  may result in an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

(See ECF No. 31 at 6).

In that order, the court also informed plaintiff that it could not consider claims of this nature because its outline of them could ultimately differ from either plaintiff's or defendants'

(See ECF No. 16 at 2-4; ECF No. 28 at 1-4; ECF No. 31 at 2-7).

The court has neither the time, nor the resources to continue to give plaintiff opportunities to present a focused complaint that complies with Federal Rule of Civil Procedure 8(a)(1) and with federal law. Plaintiff has had four opportunities to remedy the deficiencies in this complaint. (See ECF Nos. 12, 25, 29, 32). He gets no more. Instead, plaintiff may only proceed on the claims that the court has determined are cognizable as identified herein.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall add the following named individuals in the fourth amended complaint as defendants to the case caption on the docket: L. Lopez; Jeffrey Rohlfing, M.D.; Andrew Pomazal, M.D.; R. Miranda, PAC; Anne Gasior, M.D.; D. Pronecord, CDW(A); D. Perez, CSR; L. Schmidt, FNP-C; D. Perez, CSR; K. Lavallver, CCI; Hook, correctional officer; Cohn, correctional officer; R.E. Beard, former warden, and S.L. Chapman, associate warden. (See generally ECF No. 32 at 1-4);

2. This action shall only proceed on the cognizable claims identified herein, and

3. Plaintiff has stated cognizable claims against the following defendants:

| | |
|---|---|
| M. Williams, Lieutenant | J. Ramsey, Lieutenant |
| S. Nicholas, CCII | Nason, Correctional Officer |
| Cohn, Correctional Officer | Byers, Correctional Officer |
| Esquivel, Correctional Officer | B. Cornelison, CCII |
| D. Fleetwood, C&PR | D. Pronecord, CDW(A) |
| C. Lewis, Captain | Spalding, CCI |
| D. Perez, CSR | Fred Foulk, Warden |
| W.G. Hanks, Sergeant | Laguna-Griffin, Correctional Officer |
| Jeffrey Rohlfing, M.D. | Andrew Pomazal, M.D. |

understanding of them, which could, in turn, affect settlement or judgment. (See ECF No. 31 at 4). In addition, the court also referenced the directives it had given to plaintiff in its earlier screening of plaintiff's second amended complaint. (See id. at 6-7) (informing plaintiff each claim and involvement of each defendant must be sufficiently alleged). Despite all these warnings, plaintiff has continued to mix incidents, violations of right and defendants in single claims. Claims One and Four are classic examples of this.

| | |
|---|---|
| J.J. Brown, Correctional Officer | Weeks, Correctional Officer |
| R. Williams, CCII | L. Lopez |

Under separate order, the court shall direct that service be initiated on these defendants under the court's E-Service Pilot Program for civil rights cases for the Eastern District of California.

IT IS FURTHER ORDERED that all defendants who are <u>not</u> on the above list of defendants to be served – including some of those directed to be added herein by the Clerk of Court – are DISMISSED from this action.

Dated: April 9, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:13
DB/ORDERS/ORDERS.PRISONER.CIVIL RIGHTS/sosa0727.scrn.4th.ac